**Fred COOPER et al., etc., Plaintiffs-Appellees,**

v.

**Honorable Enoch T. NIX, etc., et al., etc., Defendants-Appellants.**

**No. 73-3276.**

United States Court of Appeals, Fifth Circuit.

July 18, 1974.

Rehearing Denied Aug. 27, 1974.

Wm. J. Guste, Jr., Atty. Gen., Baton Rouge, La., Tom Matheny, Asst. Atty. Gen., Hammond, La., Fred G. Benton, Jr., Baton Rouge, La., for defendants-appellants.

Donn Moss, Ray Lamonica, Baton Rouge, La., for plaintiffs-appellees.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

BELL, Circuit Judge:

This appeal grows out of a suit over regulations at Southeastern Louisiana University which require student on-campus residence with some exceptions. The basic regulations were promulgated by the Louisiana State Board of Education. These regulations, Schedules 44 and 45, were upheld by a three-judge district court in Pratz v. Louisiana Polytechnic Institute, W.D.La., 1970, 316 F. Supp. 872, Aff'd 401 U.S. 1004, 91 S.Ct. 1252, 28 L.Ed.2d 541 (1971), in the face of a claim that they were facially unconstitutional. Ample space being available on campus at Southeastern, only Schedule 44 is here involved:

". . . that all unmarried, full-time undergraduate students, regardless of age or whether or not emancipated, are required to live in on-campus residence halls as long as space is available." [1]

The suit here was brought by students who wished to reside off campus. The gist of their cause of action, assertedly local in nature so as to avoid the convening of a three-judge district court, Cf. Sands v. Wainwright, 5 Cir., 491 F.2d 417, cert. den., —— U.S. ——, 94 S.Ct. 2403, 40 L.Ed.2d 771 with Moody v. Flowers, 1967, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643, was that Southeastern was implementing Schedule 44 in an unconstitutional manner through exempting all undergraduate students age 23 and over as well as members of two social fraternities. They maintained that these practices violated the equal protection clause of the Fourteenth Amendment to the Constitution. The

district court agreed. We affirm in part and reverse in part.

There were three stages to the litigation in the district court. First, a temporary restraining order was granted ex parte. Next, a preliminary injunction was granted from the bench after an evidentiary hearing. Subsequently, extensive written findings of fact and conclusions of law were entered by the district court on the motion for preliminary injunction. Cooper v. Nix, W.D.La., 1972, 343 F.Supp. 1101. Lastly, a permanent injunction was granted on motion of plaintiffs some months later. There was no further hearing.[2]

There was a clear holding in the district court on the granting of the preliminary injunction that there was an equal protection violation as to those plaintiffs wishing to reside in Cardinal Newman Hall, an off-campus housing facility operated and supervised by The Roman Catholic Church of the Diocese of Baton Rouge, vis-a-vis those students residing off campus in fraternity houses. While it does appear that Cardinal Newman Hall and the two fraternities may be similarly situated with respect to having had a regulatory and supervisory nexus to Southeastern prior to the adoption of Schedule 44 and thus that their residents should be treated similarly, we do not reach any question with regard to this phase of the controversy. This is for the reason that this appeal entails only the permanent injunction and it is limited to disparity in treatment based on age—the 23 year old and above exemption. Plaintiffs took no cross-appeal and thus may not raise

---

1. The following are the Schedule 44 exemptions from this requirement:

   A. In any case where it appears that a full-time undergraduate student will otherwise *suffer significant hardship or* because of sufficient financial, medical or other good and sound reasons shown.

   B. In the case of older students, as, for example, (i) a returning military veteran; (ii) a previously married person where Proper Officials make a finding of fact

that such individual is by virtue of age and experience incompatible with the educational objectives and values sought to be provided by on-campus residence herein outlined.

2. The district court denied defendants' request for a further hearing. Defendants moved to disqualify the district judge on due process concepts. The order denying that motion, also a part of this appeal, is affirmed.

matters outside the context of the final order. Defendants have no cause to complain although they seem to be under the mistaken impression that such an issue inheres in the case.

The claim based on age had its genesis in a regulation adopted by Southeastern which regulation exempted all students age 23 and over from the requirements of Schedule 44. The regulation was apparently in aid of administering Exemption B, Fn. 1, supra, to Schedule 44. This regulation was repealed after this litigation began but the district court found as a fact that Southeastern continued the practice, merely substituting deed for name. This finding of fact is not contested.

■ The equal protection violation found by the district court was in the disparity between the treatment of students in the age groups 21 and 22 and those 23 and over. There was no claim as to students under age 21. The district court found the disparity in treatment to be without a rational basis and thus arbitrary. This finding is sustained on the record before us. Indeed, there is no basis whatever in the record before us to justify the disparate treatment. We thus turn to the scope of the injunction in question. It provides in operative part:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the preliminary injunction heretofore entered herein be made permanent and final, to-wit:

"Defendants, their agents, employees and all other persons, firms, corporations or institutions acting or claiming to act in their behalf, or in concert or participation with them are hereby enjoined and prohibited from requiring twenty-one year old and older students at Southeastern Louisiana University to live on campus."

It is noted that the wrong, i. e., the exemption of age 23 and above students is not enjoined. Rather the exemption is expanded to include other age groups. Schedule 44 was, in effect, rewritten by Southeastern to exempt the age 23 and over group and by the district court to exempt the age 21 and 22 groups. We hold that the scope of the injunction must be narrowed.

■ The Supreme Court has pointed out that in suits involving claims of constitutional deprivation, judicial power may be exercised only on the basis of a constitutional violation. And, in formulating remedies in such cases, as in any equity case, the nature of the violation determines the scope of the remedy. Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 16, 91 S. Ct. 1267, 28 L.Ed.2d 554, 566–567.

■ It is plain to us that the nature of the wrong here requires only the remedy that the wrong be enjoined, i. e., the 23 year old and over exemption. The order of the district court is reversed to the extent that it exceeded this remedy. The effect of this is to leave Schedule 44 intact at Southeastern, complete with the age exemption set out in Exemption B, fn. 1, supra.

Affirmed in part; reversed and remanded in part.

GOLDBERG, Circuit Judge (concurring in part and dissenting in part):

I concur in everything in my Brother Bell's opinion up to and including his determination that, in light of the nature of the wrong, the scope of the district court's injunction should be narrowed. I cannot give my unqualified endorsement to the majority opinion, however, because the majority has merely substituted one unsatisfactory remedy for another.

The district court found that defendants had failed to show any rational basis for the disparity between the treatment of students under age 23 and those 23 and over. I agree with my Brothers that the record before us sustains that finding. In order to correct that disparity the district court enjoined and prohibited defendants "from requiring twenty-one year old and older students at Southeastern Louisiana University to

live on campus." As the panel majority notes, this injunction did not eliminate the distinction based on an arbitrary age level, but merely shifted the distinction to another age level, which the evidence might or might not prove to be arbitrary. Moreover, the injunction fails to consider the possibility that the University might prefer simply to discontinue its practice of exempting students age 23 and older from the on-campus living requirement—a preference which, if it can be shown to be substantially related to the educational process, has been specifically sanctioned by the three-judge court decision in Pratz v. Louisiana Polytechnic Institute, W.D.La.1970, 316 F.Supp. 872, aff'd mem., 1971, 401 U.S. 1004, 91 S.Ct. 1252, 28 L.Ed.2d 541.

In my view this Court could have eradicated the errors in the district court's order simply by modifying it to provide that *for so long as defendants continue to exempt students age 23 and older from the on-campus living requirement,* they may not enforce the requirement as to students under the age of 23. This would give the University the options (assuming substantial relationship to the educational process) of simply rescinding the present unwritten exemption, of granting relief to students under age 23, or of proposing a new pattern of exemptions and priorities with a more rational basis than the present one.

The solution proposed by the panel majority—which, as I understand it, instructs the University to stop granting exemptions to students age 23 and older on the basis of age—is unsatisfactory for several reasons. Neither side in this litigation sought to require students age 23 and older to live on campus, and neither side is likely to be pleased with this resolution of the issue. Students under age 23 who felt that their freedom and privacy were being unduly limited by the on-campus living requirement are

not apt to derive much comfort from the knowledge that their elder classmates must now suffer the same restriction. Defendants may be equally dissatisfied because of the housing shortage they are likely to face, in view of the district court's finding that "the reason for class selection of dormitory residence is here directly related to the number of dormitory vacancies or potential students rather than to any particular academic or 'living and learning' status." (Appendix, pp. 75–76). Of course, those most certain to take exception to the remedy substituted by the majority are the students age 23 and older who until today have enjoyed what many of them must consider to be a substantial benefit. The panel has stripped them of that privilege in a proceeding in which they were not even represented.

I recognize that the law sometimes requires that issues be resolved in ways not entirely satisfactory to any of the litigants. This, however, is not such a case. Here we have a class of plaintiffs who assert that they are being required to live on campus for reasons not "substantially related to the educational process" and who, as support for their contention, show that the University has imposed arbitrary age classifications. The panel majority would answer their claim by saying, in effect, that once the older students are denied permission to live off campus, the requirement that students under age 23 live on campus will automatically be vested with substantial educational merit. I cannot accept that reasoning.

A blanket requirement that all students live on campus, with only the narrow exemptions written· into Schedule 44 (see footnote 1 of Judge Bell's opinion), *might* be justifiable in 1974 at Southeastern Louisiana University as it was in 1970 at Louisiana Polytechnic Institute;[1] and the University should be

---

1. In upholding the application of Schedule 44 at Louisiana Polytechnic Institute, the three-judge court majority in *Pratz, supra,* emphasized the proven dedication of Polytechnic to the living and learning center con-

cept, the availability of adequate and suitable on-campus housing, and the broad adherence in educational circles at that time to the view that "the living and learning center concept is a very valuable educational tool."

given every opportunity to demonstrate that it is justifiable, if that is the course the University wishes to pursue. In my opinion, however, this Court should neither instruct the University that it *must* pursue that particular course nor assume, on the basis of a record developed without consideration of that alternative, that such a course would pass constitutional muster.

The only wrong thus far demonstrated in this case lies with the drawing of an arbitrary and unjustified distinction at age 23. I would enjoin the defendants from continuing to make that distinction, and leave it to the various elements of the University community to work together to achieve a reasonable and equitable alternative. I therefore dissent from the remedy proposed in the majority opinion.

The record before us in the present case provides no basis on which to judge whether that concept continues to enjoy such extensive approval among prominent educators. The district court's findings, however, cast serious doubt upon the availability of adequate housing at Southeastern as well as upon the dedication of Southeastern officials to the living and learning center concept. *Cf.* Mollere v. Southeastern Louisiana College, E.D.La.1969, 304 F.Supp. 826.