TEXAS WOMAN'S UNIVERSITY,
Petitioner,

v.

Vanida CHAYKLINTASTE et
al., Respondents.

No. B-5319.

Supreme Court of Texas.

Dec. 10, 1975.

John L. Hill, Atty. Gen., William C. Bednar, Jr., Asst. Atty. Gen., Austin, for petitioner.

Michael J. Whitten, Denton, for respondent.

POPE, Justice.

Vanida Chayklintaste and Caroline-Anne Bolce instituted this suit on their own behalf and on behalf of a class of students, complaining of the constitutionality of a rule at Texas Woman's University which required all undergraduate women students under the age of twenty-three to live in one of the campus dormitories. The trial court granted a permanent injunction which prohibits the University from enforcing the rule and the court of civil appeals affirmed the decree, holding that the rule was discriminatory on the basis of sex. 521 S.W.2d 949. The sufficiency of the class representation is not questioned.

The rule which was the basis for the constitutional attack is a very old one and is known in the academic community as the parietal rule, and it governs the residence of undergraduate students. The rule under attack with its important exemption provisions is:

"The following University policies govern housing:

"1. RESIDENTIAL PROVISION

"Every undergraduate woman student is required to live in a unit of the residential system.

"For residential purposes an 'undergraduate' is defined as a student 22 years of age or younger who has not yet received a B.A. or B.S. degree. A woman who ordinarily would be required to live in a University residence under this definition may obtain a waiver of this requirement from the University Housing Coordinator upon presenting satisfactory evidence that the student is married or is living with parents within commuting distance, or is a veteran of one of the armed services. Special hardship cases may be reviewed by the University Housing Committee."

Vanida Chayklintaste is no longer enrolled at the University, and she did not testify. Miss Bolce testified that she was nineteen years of age and was a sophomore. Disciplinary action had been commenced against her when she moved to an apartment two miles off campus, and she then instituted this suit. Miss Bolce made no attempt to obtain an exemption from the rule by reason of hardship.

■ At oral argument before this court, the court was informed that the rule which was under attack has since been changed so that it now applies with equal force to both male and female students who are under twenty-three. The objection to the constitutionality of the rule by reason of sex has now become moot and hypothetical. *Board of Trustees v. Kreger,* 369 S.W.2d 916 (Tex.

1963); *Noland v. Maxey,* 119 Tex. 462, 32 S.W.2d 822 (1930). There remains in the case, however, the question which was presented to the trial court and not discussed by the court of civil appeals: Does the rule's applicability only to the students who are under twenty-three constitute an unconstitutional classification?

■ The age classification is constitutionally permissible if it is reasonable, not arbitrary and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). When no suspect categories are involved, any rational basis may justify the classification. *Johnson v. Robinson,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

In recent years the parietal rules of several state universities have been constitutionally challenged. *Pratz v. Louisiana Polytechnic Institute,* 401 U.S. 1004, 91 S.Ct. 1252, 28 L.Ed.2d 541 *aff'd mem.,* 316 F.Supp. 872 (W.D.La.1970); *Cooper v. Nix,* 343 F.Supp. 1101 (W.D.La.1972), *aff'd,* 496 F.2d 1285 (5th Cir. 1974); *Prostrollo v. University of South Dakota,* 507 F.2d 775 (8th Cir. 1974); *Poynter v. Drevdahl,* 359 F.Supp. 1137 (W.D.Mich.1972); *Mollere v. Southeastern Louisiana Polytechnic Institute,* 304 F.Supp. 826 (E.D.La.1969). The cases seem to turn on the question of whether or not the universities implemented the rules for a legitimate educational purpose. In *Pratz v. Louisiana Polytechnic Institute, supra* at 885, the district court held that such a purpose existed:

It is argued that the parietal rules which we today uphold require students to live in dormitories "*under the guise* of having students receive a complete education through the 'living and learning experience' of campus communal living." (Emphasis theirs.)

We simply do not feel the numerous outstanding educators, many of national renown, who submitted affidavits in this case to the effect that the living and learning center concept is a very valuable educational tool would say so unless this indeed was their sound, professional, expert opinion. It is a travesty of a sort even to infer they would be parties to any sort of disguised scheme to protect the interests of bondholders who bought the bonds within parietal covenants to protect their investments.

As already stated, the living and learning center concept was being followed here long prior to promulgation of the contested rules. Generation after generation of students have profited from such an experience. Only recently did this concept, formerly adhered to voluntarily, have to be placed in writing and made mandatory.

*Prostrollo v. University of South Dakota,* 507 F.2d 775, 782 (8th Cir. 1974), exhaustively considered the parietal rule in general and upheld a requirement that all freshmen and sophomore students live in the residence halls of the university. The court there concluded:

This parietal rule and its challenged classification are directed toward a permissible objective. The classification is not based on any patently invidious basis. We conclude that the rule is reasonable and not arbitrary and that it "bears a rational relationship to a permissible state objective." *See Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). We find this test to be met here. *Accord, Pratz v. Louisiana Polytechnic Institute,* 316 F.Supp. 872 (W.D.La.1970), appeal dismissed, 401 U.S. 951, 91 S.Ct. 1186, 28 L.Ed.2d 234, aff'd, 401 U.S. 1004, 91 S.Ct. 1252, 28 L.Ed.2d 541 (1971); *Poynter v. Drevdahl,* 359 F.Supp. 1137 (W.D.Mich.1972).

■ As implemented in this case, the residence rule includes and applies equally to all students beneath twenty-three years of age, which class generally is that which applies to and includes undergraduate students. The Vice-President for Fiscal Affairs said that the rule was basically an educational one and that it was in existence before the time that bonded indebtedness was incurred against the residence and boarding facilities at the University. He said, however, that occupancy of the dormitories was essential to the University's meeting its financial obligations.

The Vice President for Student Affairs, a professor of education, and an instructor of social work all testified that the parietal rule served a valid educational purpose. Texas Woman's University is a residential liberal arts institution; the University administration believes that on campus dormitory life adds to the intellectual and emotional development of its students. A closer student-faculty relationship, an atmosphere of varied intellectual and political attitudes, and the opportunity to share diverse personal backgrounds and experiences were some of the factors which the University witnesses felt dormitory life adds to the students' education. Two articles from professional educational journals also supported the University's position. 54 Educational Record 3 (Summer 1973); 63 Educational Research 8 (April 1970).

The administration of Texas Woman's University considers dormitory life an integral part of their undergraduate program. Although it was recognized that this type of educational experience may not be good for everyone, two witnesses for the University testified that they believed that the age bracket within this rule described closely "that group of students that would benefit most from the living and learning concept . . . .." The respondent offered no evidence on this point. The University has furnished a sufficient rationale for the classification. Therefore the trial court's hold-

ing that the rule violates equal protection because of age discrimination is reversed.

Accordingly the judgments of the trial court and the court of civil appeals are reversed and the injunction dissolved.