**LUBBOCK POSTER COMPANY, Appellant-Appellee,**

v.

**The CITY OF LUBBOCK, Texas, et al., Appellants-Appellees.**

**No. 8875.**

Court of Civil Appeals of Texas, Amarillo.

July 24, 1978.

Appellant Lubbock Poster Co.'s Motion and Amended Motion for Rehearing Denied Aug. 21, 1978.

Phillip Tocker, Brownsville, Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant-appellee.

Fred O. Senter, Jr., City Atty., James P. Brewster, Lubbock, for appellants-appellees.

DODSON, Justice.

Lubbock Poster Company, a co-partnership composed of Iva Edington and Homer L. Hensley, brought this action against the City of Lubbock, its director of the planning division, and its administrator of environmental control, challenging the constitutional validity of certain provisions of the City's comprehensive zoning ordinance. The ordinance regulates, *inter alia*, the location, proximity, size, separation and height of off-premise billboards.[1] The ordinance requires all existing billboards to either conform to the regulations or be removed at the end of a six and one-half year amortization period. Lubbock Poster Company also sought an injunction against the City and its officials to prohibit enforcement of these contested provisions of the ordinance. John L. Hill, the Attorney General of the State of Texas, is joined in the action under Section 11 of Article 2524–1 of the Revised Civil Statutes of Texas to represent the interest of the State against alleged violations of the Federal Highway Beautification Act. The non-jury trial resulted in the court declaring void only the nonconform-

1. The ordinance defines billboards as "[a]ny structure or portion thereof upon which are outdoor advertising signs which advertise goods, products or services not related to goods, products or services sold on the premises on which the sign is located." Also, a "structure" is defined as "[a]nything constructed or erected which requires location on the ground or attached to something having a location on the ground."

ing use and amortization provisions, enjoining the enforcement of these provisions and denying all other requested relief. From this judgment both parties appeal. Affirmed in part; reversed and rendered in part.

The City enacted the zoning ordinance to "promote and protect the health, safety, comfort, convenience, prosperity and general welfare of the citizens of Lubbock by assuring quality development, to allow for proper economic growth which conforms to a comprehensive plan of the city." Under the ordinance the City is divided into nineteen "zones or districts, restricting and regulating therein the location, erection, construction, reconstruction, alteration and use of buildings, structures and land for trade, industry, residence and other specified uses" and further "providing for the gradual elimination of nonconforming uses of land, buildings and structures."

The ordinance also provides that all signs or billboards which did not conform to the requirements of the ordinance on July 19, 1975 (the effective date of the ordinance), are nonconforming uses and "shall be brought into compliance or removed by January 1, 1982." Although other nonconforming uses of land may be continued within certain limitations and restrictions, signs and billboards are specifically excluded from the continuing use provisions of the ordinance.

Lubbock Poster Company asserts that the trial court erred in not declaring the entire billboard section of the ordinance void. The company contends the ordinance takes its property without compensation in violation of both the federal and state constitutions, and also asserts that the ordinance is an unreasonable exercise of municipal police powers. The City of Lubbock challenges the trial court's failure to uphold the amortization and nonconforming use provision and asserts the constitutionality of these

provisions as a valid exercise of municipal police powers.

The validity of the ordinance is a question of law for the court and there are basic principles which we must consider in determining the issues presented by the parties. It has been long recognized that governing bodies of the cities have constitutional authority to promote the health, safety and general welfare by implementing comprehensive zoning ordinances. *Village of Euclid v. Ambler Realty Company*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Billboards and outdoor advertising are a proper subject for regulation under the state police power. *Suffolk Outdoor Advertising Co. v. Hulse*, 43 N.Y.2d 483, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977); *National Advertising Company v. County of Monterey*, 1 Cal.3d 875, 83 Cal.Rptr. 577, 464 P.2d 33 (1970), cert. denied, 398 U.S. 946, 90 S.Ct. 1869, 26 L.Ed.2d 286.

· [1] In *City of University Park v. Benners*, 485 S.W.2d 773 (Tex.1972), the Texas Supreme Court joined the prevailing view of outside jurisdictions by recognizing the "amortization" technique as a valid exercise of municipal police power to terminate nonconforming property uses. The *Benners* Court said "that such an enactment is subject to the same test of validity as other legislative acts, i. e., whether it is reasonable and bears a fair relationship to the object sought to be obtained." If the ordinance passes constitutional muster as reasonable and bears a fair relationship to the object sought to be obtained, it does not constitute a "taking" of property in the eminent domain sense. Instead, it is a valid exercise of municipal police power. 485 S.W.2d at 777–78.

Lubbock Poster Company maintains that the sections of the ordinance regulating the location, proximity, size, separation, setback and height of billboards [2] bear no substan-

---

2. Billboards are permitted uses and may be located in three districts, which are the commercial "C–4", the light manufacturing "M–1" and the heavy manufacturing "M–2" zones. These three zoning districts are numerous and

the same are geographically disbursed throughout the City of Lubbock.

Billboards located in the "C–4" districts must be "a minimum of eighty (80) feet from any residentially zoned property line" and may

tial relationship to the health, safety, morals and general welfare of the community and constitute an unreasonable exercise of municipal authority. More specifically, they say the mere existence of billboards neither promotes nor destroys morals; that there is no evidence that billboards cause traffic accidents; and that there is no evidence that billboards adversely affect the value of adjacent property.

The City counters that the ordinance is entitled to the presumption of validity which is applicable to other municipal legislation. The City further contends that Lubbock Poster, attacking the ordinance, has the burden of showing that no conclusive, debatable or issuable facts or conditions exist which would authorize the City to exercise the discretion confided in it by enacting these sections of the ordinance.

█ Because the ordinance is an exercise of the legislative power of the governing body of the City of Lubbock, the ordinance must be presumed to be valid, and the court cannot interfere unless it appears that these sections of the ordinance represent a clear abuse of municipal discretion. *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477, 480 (1955); *City of University Park v. Benners, supra* at 779. Lubbock Poster has the " 'extraordinary burden' . . . 'to show that no *conclusive,* or even *controversial* or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it' " by enacting these sections. *City of Waxaha-*

*chie v. Watkins, supra* at 480–81; *see also City of University Park v. Benners, supra* at 779.

"If reasonable minds may differ as to whether or not a particular zoning restriction has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the restriction must stand as a valid exercise of the city's police power." *City of Waxahachie v. Watkins, supra* at 481. As stated by the court in *Watkins,* "if the issue of validity is fairly debatable courts will not interfere." *Id.* at 481. The United States Supreme Court employed the same standard in *Village of Euclid v. Ambler Realty Company, supra,* stating, "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." 272 U.S. at 388, 47 S.Ct. at 118. *See also Zahn v. Board of Public Works,* 274 U.S. 325, 328, 71 L.Ed. 1074, 47 S.Ct. 594 (1927); *accord, Moore v. City of East Cleveland,* 431 U.S. 494, 514 n.1, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (concurring opinions stating that the standard remains viable).

█ After hearing disputed evidence the trial court found that the location, proximity, size, separation, setback and height provisions of the ordinance had a reasonable relationship to the public health, safety or general welfare. We are persuaded that each of these provisions presents "fairly debatable" issues concerning the relationship they bear to the public health, safety or the general welfare of the community.[3]

---

have a maximum area of "three hundred (300) square feet."

Billboards located in each of the three districts are required to conform to separation, setback and height requirements. A two hundred feet *minimum separation* between all billboards on the same side of a street is required, but this separation requirement increases to five hundred feet on expressways. The setback requirement is "forty-three (43) feet or the same distance of an adjacent building." If the billboard is located between two buildings, then it must set back "the same as that of the building which has the greatest setback from the property line." The maximum height of all billboards is limited to thirty-five feet.

3. Under the ordinance the zoning districts were intended "To promote the stability of existing land uses that conform with a comprehensive plan and to protect them from inharmonious influences and harmful intrusions; To promote a harmonious, convenient, workable relationship among land uses; To encourage quality development through effective planning which utilizes modern innovations of urban design; To promote and protect the aesthetic quality of the city, by conserving and enhancing the taxable values of land and buildings throughout the city; To protect and enhance areas of scenic, historic or cultural importance; To provide adequate light and air; To encourage proper population densities and prevent the overcrowding of structures; To provide adequate protection

The challenged provisions are reasonably calculated to aid in accomplishing the intended purposes of the ordinance.

We conclude that Lubbock Poster Company failed to meet the extraordinary burden of showing that no controversial or issuable facts or conditions existed which would have authorized the City of Lubbock's governing body to exercise the discretion confided in it. In the absence of such a showing, these challenged provisions of the ordinance must stand as a valid exercise of the City's police power.

The City asserts the constitutional validity of the nonconforming use and amortization provisions of the ordinance. Lubbock Poster Company contends these provisions constitute a taking of its property without compensation and that the net effect of the ordinance is the total destruction of its business. It also maintains the provisions violate the due process and equal protection clauses of the federal constitution.

Lubbock Poster Company owns 285 billboards located on 162 sites in the City of Lubbock. The trial court found that on the effective date of the ordinance, Lubbock Poster's billboards had an average remaining useful, income-producing life in excess of 25 years, subject to normal attrition from the loss of ground site leases.

Lubbock Poster states that only two of the existing billboards conform to the location, proximity, size, separation, setback and height requirements of the ordinance. It also claims that only 36 of the remaining billboards can be altered to conform to the requirements of the ordinance. The company states that on July 19, 1975, the reasonable market value of all billboards owned by Lubbock Poster Company in the City of Lubbock which do not conform and cannot be made to conform to the provisions of the ordinance was $710,000. It alleges that the reasonable cost of altering those billboards which can be made to conform to the provisions of the ordinance is $70,000 and that the reasonable cost of demolishing or re-

moving the billboards which do not conform and cannot be made to conform is $132,000. It says there are only seven to fifteen new billboard locations available under the ordinance. The City challenges these assertions and the trial court's findings in this regard.

Lubbock Poster Company contends that the trial court properly balanced the public's benefit under the ordinance against Lubbock Poster Company's loss and correctly held the nonconforming provisions of the ordinance to be constitutionally void. In support of its position, Lubbock Poster Company relies on *City of Corpus Christi v. Allen,* 152 Tex. 137, 254 S.W.2d 759 (1953) and other cases antedating *Benners.*

In *Allen,* the City of Corpus Christi attempted to abate an automobile wrecking yard as a nonconforming land use under a three year amortization period. The Supreme Court held the ordinance unconstitutional as applied to the particular facts in the case and emphasized that the nonconforming use was not a nuisance per se and did not appear harmful in any respect to public health, safety, morals or welfare. The Court further held that the exercise of municipal power was unreasonable because of the small benefit to the City. However, the Court specifically stated in *Allen:*

Our conclusion is not to be construed as a holding that the ordinance in question may not, under other circumstances, be invoked to terminate a non-conforming use, not a nuisance nor injurious to the public health, morals, safety or welfare.

254 S.W.2d at 761. In *Benners* (decided 19 years later) the Supreme Court specifically reiterated "that the conclusion there reached [in *Allen*] was not to be construed as a holding that the ordinance could not be constitutionally invoked to terminate a nonconforming use under other circumstances." The *Benners* Court also emphasized that:

We are in accord with the principle that municipal zoning ordinances requiring the termination of nonconforming uses under

for community investments in water, sewerage, streets, schools, parks, and other community facilities; To promote a safe, effective traffic

circulation system; To provide safety from fire and other dangers."

reasonable conditions are within the scope of municipal police power; and that property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made. Otherwise, a lawful exercise of the police power by the governing body of the City would be precluded. (citations omitted)

*City of University Park v. Benners, supra* at 778.

The balancing of public benefit against private loss test advocated by Lubbock Poster results in unequal treatment to property owners and users similarly affected by the operation of an abatement ordinance. The public benefit, private loss and abating period factors are not conducive to definitive and quantitative balancing by the courts. The actual result under the test is that a property use with a small value and a so-called nominal loss is abated, if not accomplished too quickly, and the use with a large value or so-called substantial loss is virtually immune from abatement. In effect, a substantial loss is usually only equated with a large value. We are persuaded that *Benners* and other authorities dictate a different approach in resolving the question concerning the reasonableness of the abating period.[4]

The underlying principle of amortization is stated in *City of University Park v. Benners,* as follows:

The usual approach rests on the principle that there is not a legally significant difference between existing and prospective uses in land; and that the required termination of a pre-existing land use, with allowance for recoupment, is no different

in kind from restrictions upon future land use alternatives. So it is concluded that termination does not constitute a "taking" in the eminent domain sense but an exercise of the police power in the public interest . . . .

485 S.W.2d at 777–78. Also, the Supreme Court viewed "recoupment of investment" as the major consideration in determining reasonableness by stating:

[T]here is no difference in kind between terminating a land use which pre-dates a zoning change, with allowance for recoupment, and restricting future land uses not presently utilized. The former requires no more than that the property owner be placed in the equivalent position of the latter, i. e., that he be afforded an opportunity to recover his investment in the structures theretofore placed on the property.

*Id.* at 779. Under *Benners,* the property owners are placed in an equivalent position by affording them a reasonable opportunity to recoup their investment only in any structures theretofore placed on the property.

■ We are persuaded by *Benners* and other authorities that the pertinent factors in determining the reasonableness of the opportunity afforded Lubbock Poster Company to recoup or recover its "investment in the structures theretofore placed on the property" are the amount of its initial capital investment in the structures, investment realization at the effective date of the ordinance, life expectancy of the investment, and the existence or nonexistence of lease obligations, as well as any contingency clauses therein permitting termination of

4. Although the Texas appellate courts have not directly dealt with the matter of a reasonable amortization period to abate nonconforming billboard uses, the courts in a number of other jurisdictions have passed favorably upon various legislative pronouncements requiring removal of nonconforming billboards within amortization periods varying in length from one to five years. *See Murphy, Inc. v. Board of Zoning Appeals of Wilton,* 147 Conn. 358, 161 A.2d 185 (1960) (2 years); *National Advertising Co. v. County of Monterey, supra,* (1 year); *Grant v. Mayor and City Council of Baltimore,* 212

Md. 301, 129 A.2d 363 (1957) (5 years); *Webster Outdoor Advertising Co. v. City of Miami,* 256 So.2d 556 (Fla.App.1972) (5 years); *Art Neon Co. v. City and County of Denver,* 488 F.2d 118 (10th Cir. 1973), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974) (2 to 5 years). In general, the courts concluded that ordinances and similar police power regulations requiring the conformity or removal of billboards and providing a reasonable amortization period should pass constitutional muster.

such leases. *Modjeska Sign Studios, Inc. v. Berle,* 43 N.Y.2d 468, 402 N.Y.S.2d 359, 373 N.E.2d 255 (1977); *National Advertising Co. v. County of Monterey, supra;* and *Grant v. Mayor and City Council of Baltimore, supra,* (dealing directly with abatement of nonconforming billboard uses by amortization). In addition, we believe that removal cost should be considered by determining if the amortization period reasonably affords Lubbock Poster Company an opportunity to recoup or recover any removal cost which is directly attributable to the regulatory effects of the ordinance. However, we conclude that *Benners* necessarily precludes recoupment or recovery of the market value or any conformity cost of the structures as essential considerations in determining the question of reasonableness by requiring only that the owner be afforded a reasonable opportunity to recoup or recover his investment in the structures.

The evidence showing the amount of initial capital investment in the structures, the amount of such investment realized to the effective date of the ordinance and the amount remaining, if any, to be recouped during the amortization period, are matters necessarily within the knowledge of Lubbock Poster Company. Lubbock Poster does not point us to such evidence nor contend that the amortization period is too short to recoup its capital investment in the structures. However, in this connection, the trial court found from the evidence:

1. that the depreciation period customarily followed by Lubbock Poster Company for billboards for tax purposes ranged from 5 to 10 years;

2. that of 456 of the billboards listed on the depreciation schedules submitted with Lubbock Poster Company's 1975 United States Income Tax Return, all but 51 had been fully depreciated before the date of such return;

3. that of the 51 billboards for which the cost or basis had not been fully depreciated, 37 were acquired as of an effective report date of July 1, 1970, were being depreciated at a straight line of 20 percent rate (5 years) and were fully depreciated with the 1975 return;

4. and that the remaining 14 were acquired as of an effective report date of July 1, 1975, were being depreciated at a straight line 14 percent (7.14 years) and should be fully depreciated by January 1, 1982.

■ In *Grant v. Mayor and City Council of Baltimore, supra,* the party challenging the constitutional validity of an ordinance, which abated nonconforming billboard uses at the end of a five year amortization period, had claimed a five year useful life when depreciating its billboards for federal income tax purposes. The court concluded:

A corporation that has regularly, year by year, acted in its financial affairs, under the oath of its authorized officers (and penalty of perjury), on the premise that the full useful life of its billboards is five years is handicapped seriously in arguing persuasively that legislative reliance on that same premise has done it a constitutional wrong—has taken from it substantial property without compensation—by banning the further use of those billboards.

129 A.2d at 372. To the same effect is *National Advertising Co. v. County of Monterey, supra.* We agree with the Maryland court and the California court. Lubbock Poster has or will have fully depreciated its billboards by the end of the amortization period afforded by the ordinance.

It is undisputed that the ordinance does not preclude Lubbock Poster from continuing to operate its billboards, in place, and derive revenue therefrom during the amortization period, since immediate conformity or removal is not required under the ordinance. In fact, during the amortization period, Lubbock Poster can operate its billboards in its existing non-competitive posture.

The evidence shows that Lubbock Poster normally must relocate approximately 20 percent of its billboards each year for various reasons other than the regulatory effects of the ordinance. The practical effect of the annual attrition rate would be to

cause Lubbock Poster to relocate, at its own expense, and for its own reasons, a majority, if not all of its billboards, during the amortization period. In fact, Lubbock's mayor was aware of the 20 percent attrition rate and testified that he thought the six and one-half year amortization period would provide Lubbock Poster with ample time to relocate its billboards.

The evidence presented by Lubbock Poster shows there are 595 possible billboard site locations under the ordinance in zones C–4, M–1 and M–2. The evidence further shows that of this number there are 267 site locations on which conforming billboards could be placed within the City. However, Lubbock Poster says it probably could not lease 31 of the sites, that 63 would not give 350 feet of viewer visibility, that 85 do not presently have enough viewer traffic, and that 11 are located away from the main traveled right of way. It further says that of the remaining 328 of the 595 possible permitted locations under the ordinance, there is no place to build billboards on 210 site locations and 118 sites are excluded for various reasons. However, under the City's rezoning process other properties are included from time to time in the C–4 zone which enhances the availability of new locations of billboards. In essence, the evidence shows that off-premise billboards are not precluded or excluded from the City of Lubbock, even though the number of economically feasible locations may well depend on a number of factors such as future traffic patterns, development trends within the City and the willingness of Lubbock Poster to obtain leased sites by favorable economic inducements to prospective landlords.

The trial court found that Lubbock Poster owned, in fee simple, only five billboard site locations and that all other sites "were under a standard lease form, providing for a primary term of three years and thereafter unilaterally terminable by either lessee or lessor upon required notice." In this connection Lubbock Poster does not show or contend that it has or will incur any lease expenses as a result of long term non-cancellable site lease obligations, which will extend beyond the end of the amortization period. However, Lubbock Poster points out that it has billboards located on lease property under the so-called three year standard lease form which have continued over a number of years dating back to the 1940's and 1950's in some instances. Lubbock Poster argues that the life span and the possibility of renewal of the lease has a compensable value, which is taken by the operative effects of the ordinance in violation of the due process clause of the federal constitution.

In support of this position Lubbock Poster relies on *Almota Farmers Elevator and Warehouse Co. v. United States,* 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973). In that eminent domain condemnation proceeding by the federal government to acquire a leasehold interest, the Court concluded that the possibility the lease might or might not be renewed was a necessary and proper consideration in determining the market value of the leasehold interest and the improvements permanently attached to the realty thereunder. However, as previously discussed, the reasonableness of the amortization period is premised on recoupment of investment in the structures rather than the recoupment of their market value. Termination of the land use by the amortization technique does not constitute a taking in the eminent domain sense.

Under the ordinance, the use of the fee title property, leasehold property and the structures are regulated, but such properties are not taken in the eminent domain sense. As we pointed out above from *Benners,* "property owners do not acquire a constitutionally protected vested right in property uses once commenced." *City of University Park v. Benners, supra,* 485 S.W.2d at 778. The *Almota* eminent domain case is not controlling in the case before us.

Under the circumstances we must conclude that the ordinance reasonably affords Lubbock Poster Company an opportunity to recoup or recover its investment in the billboard structures "theretofore placed on the

property," any removal cost directly attributable to the regulatory effects of the ordinance, and that Lubbock Poster Company has failed to meet its extraordinary burden of showing that no conclusive, or even fairly issuable facts or conditions exist in support of the exercise of the City's police power.

■ We also reject Lubbock Poster's contention that the challenged provisions of the ordinance are retroactive enactments as to billboards, and therefore are constitutionally void. Lubbock Poster does not have a constitutionally vested right in either the billboards, or their use, which precludes regulation under a valid exercise of the City's police power.

Lubbock Poster Company further contends that the ordinance is void under both the due process and equal protection clauses of the United States Constitution because the ordinance fails to grant any nonconforming use status to billboards, while granting such a status to all other property and classes. We do not agree.

■ Both the federal and Texas courts have two standards of analysis in determining an equal protection challenge to state legislative enactment. If the state action invades a fundamental right or discriminates against a suspect class, courts apply the strict scrutiny test. Otherwise, the legislation is tested under the rational relation test.

■ Under the rational relation test the classification is constitutionally permissible if it is reasonable, not arbitrary and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971); *Texas Woman's University v. Chayklintaste*, 530 S.W.2d 927 (Tex.1975). When, as here, no suspect categories are involved, any rational basis may justify the classification. *See Johnson v. Robison*, 415 U.S. 361, 375 n.14, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

■ We have concluded above that the challenged provisions of the ordinance are reasonable. The chief objectives of the nonconforming use requirements are:

[T]o prevent additions to and alterations or remodeling of existing buildings or structures in such a way as to avoid the restrictions and limitations lawfully imposed hereunder, providing for the gradual elimination of nonconforming uses of land, buildings and structures.

The nonconforming use provisions of the ordinance bear a fair and substantial relation to the objective of the ordinance. Also, all signs or billboards must conform to the ordinance or be removed by January 1, 1982. In each instance, all sign and billboard users are treated alike. We conclude that the classification does not violate the equal protection or due process clauses of the Constitution.

Lubbock Poster also attacks the billboard sections of the ordinance on the basis of the first amendment. The company asserts that freedom of speech is abridged because the ordinance destroys billboards as a medium of communication in Lubbock. Four points of error complain of the sufficiency of the evidence supporting the trial court's finding that the billboard section does not interfere with free speech.

■ Although commercial speech is accorded first amendment safeguards, the manner in which commercial advertising is disseminated is subject to regulation. *Bigelow v. Virginia*, 421 U.S. 809, 826, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 760, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). The Court in *Virginia Pharmacy* made clear that mere regulation of time, place and manner of advertising is acceptable if for a valid purpose and if alternative channels of communication are left open. 425 U.S. at 770–71, 96 S.Ct. 1817. It is significant to note that unlike the regulation in *Virginia Pharmacy* which prohibited all advertising of prescription drugs, the Lubbock ordinance does not prohibit billboard advertising altogether. Instead, the Lubbock ordi-

nance specifies where and in what manner this medium of advertising may be conducted.

A city's right to regulate the manner and content of speech was further clarified in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In *Mini Theatres* the Court reiterated that a city's general zoning laws may require theaters to satisfy locational and other requirements by conforming to specified commercial zones. Asserting that the content of sexually explicit theaters may be used as a basis for zoning them differently from other theaters, the Court noted that a state may also regulate the content of billboards by only allowing them to advertise a nearby business. 427 U.S. at 68, n.30, 96 S.Ct. 2440 *citing Markham Advertising Co. v. State,* 73 Wash.2d 405, 439 P.2d 248 (1968), *appeal dismissed,* 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969).

Lubbock Poster argues that the Supreme Court's decision in *Linmark Associates Inc. v. Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) controls the present case. We disagree. In *Willingboro* the Court voided a local ordinance prohibiting residential "for sale" signs in order to impede the flight of white homeowners from the racially integrated community. The unanimous Court found that the ordinance violated the first amendment because it prohibited certain signs based on their content. 431 U.S. at 94, 97 S.Ct. 1614. By contrast, the Lubbock ordinance only seeks to regulate the time, place and manner of outdoor advertising rather than the content. *Willingboro* made clear that it was not condemning regulations of this type. As a matter of law, the billboard section of the ordinance does not abridge the first amendment guarantee of freedom of speech.

Lubbock Poster's remaining cross points contend that the ordinance jeopardizes federal highway funds and denies the company equal protection by not compensating for signs taken as required by federal and state highway beautification acts. Congress enacted 23 U.S.C. § 131 to control

outdoor advertising along the interstate highway system in order to promote the safety and recreational value of public travel. The act seeks to affect its goal by requiring states to control the erection and maintenance of signs along the system under penalty of a reduction in federal highway funds. 23 U.S.C. § 131(b). Section 131(g) requires that just compensation be paid for the removal of any nonconforming signs. Texas enacted Tex.Rev.Civ.Stat. Ann. art. 6674v–1 (1969) to comply with the federal act.

Unlike the Texas act, it is apparent that the Lubbock zoning ordinance was not passed to accommodate the federal highway beautification act. Rather than controlling signs along the interstate highway system, the Lubbock ordinance was part of a comprehensive zoning plan for the City of Lubbock. We have found no case holding that such a municipal ordinance jeopardizes federal highway funds or denies equal protection by not compensating sign owners. Moreover, numerous cases have summarily rejected such contentions. *See, e. g., Modjeska Sign Studios, Inc. v. Berle, supra; Markham Advertising Co. v. State, supra.* It has been specifically held that federal and state highway beautification acts do not restrict a city's use of police power to terminate nonconforming signs. *Art Neon, Inc. v. City and County of Denver, supra. See also E. B. Elliott Advertising Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir. 1970), *cert. denied,* 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35.

In summary, we conclude that the challenged provisions of the ordinance constitute a constitutionally valid exercise of the City of Lubbock's police power. Lubbock Poster Company's cross points one through twelve are overruled and the City of Lubbock's cross points one through six, eight and ten are sustained.

Accordingly, that portion of the trial court's judgment declaring void, and enjoining the enforcement of, the nonconforming use and amortization provisions of the ordinance is reversed, and judgment is here rendered declaring that these provisions are

valid and dissolving the injunction against their enforcement; in all other respects the judgment of the trial court is affirmed.

Costs are adjudged against Lubbock Poster Company.