UNIVERSITY INTERSCHOLASTIC LEAGUE, et al., Appellants,

v.

NORTH DALLAS CHAMBER OF COMMERCE SOCCER ASSOCIATION, et al., Appellees.

Nos. 05–84–01122–CV, 05–83–01250–CV.

Court of Appeals of Texas, Dallas.

March 14, 1985.

Peter A. Nolan, Bunton, Nolan, Ode & Cooper, John L. Darrouzet, Austin, for appellants.

Michael Lowenberg, P.C., Robert B. Crotty, Robert Elkin, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellees.

Before GUITTARD, C.J., and ALLEN and COLEMAN [1], JJ.

COLEMAN, Justice (Retired).

## ON MOTION FOR REHEARING

Appellants, the University Interscholastic League and the Executive Committees of District 6 AAAAA, District 7 AAAAA, District 8 AAAAA, District 9 AAAAA, District 10 AAAAA, District 11 AAAAA, District 13 AAAAA, and District 14 AAAAA appeal from a judgment of District Court of Dallas County, Texas, by which appellees, North Dallas Chamber of Commerce Soccer Association, North Texas State Soccer Association, Richardson Soccer Association, Irving Soccer Association, Oak Cliff Soccer Association, Arlington Soccer Association, and A. Agoos, as next friend of Jeff Agoos, and Jerry Paulette, as next friend of Todd Paulette, were granted a permanent injunction. The injunction prohibited appellants from enforcing UIL rule 1270(d) which declares public high school contestants who have previously played on their high school varsity soccer teams ineligible for participation on their high school soccer teams in the event they play or practice with non-school soccer teams between the first day of school and November 12. The court based its action on its finding that UIL rule 1270(d) violates the equal protection guarantees of the Texas Constitution, the United States Constitu-

---

**1.** The Honorable Tom F. Coleman, Chief Justice, First Supreme Judicial District, Retired, sitting by assignment.

tion, and 42 U.S.C. § 1983 (Supp.1983) and is void and unenforceable.

This case was consolidated with cause number 05–83–01250–CV which was an appeal from a similar injunction against the UIL involving some of the same parties and the predecessor soccer rule to UIL rule 1270(d). The parties have stipulated that Cause No. 05–83–01250–CV is moot. Accordingly, the judgment in that case is reversed and the cause is ordered dismissed.

The University Interscholastic League, organized and directed by the University of Texas at Austin, was formed to better prepare students to assume their roles as citizens in a democratic society. Its members are those Texas public schools who voluntarily choose to participate in the University of Texas' interscholastic program, which organizes and directs extracurricular activities among Texas public schools.

With possibly a few exceptions, all of the Public Schools of Texas have voluntarily determined to join the Interscholastic League. As members they participate in such of the activities of the League as they desire. In 1981, by vote of its membership, the Interscholastic League determined to permit soccer as a UIL sport, and a minority of the schools voted to participate in the new sport. Representatives of the participating schools devised rules and regulations to govern the sport. The rules were first promulgated for the 1982–83 school year.

Soccer rule 1270(d) was first adopted for the year 1984. It reads:

(1) November 12: first date for organized or formal soccer practice for contestant or a team before or after school. No school or non-school soccer practices before or after school from the first day of school until the season starts for students who played varsity during the previous year. Violation of this rule shall result in loss of varsity soccer eligibility for the current school year.

Organized children's soccer in the United States is generally played under the auspices of the United States Youth Soccer Association, which is the Children's Division of the United States Soccer Federation, Incorporated. Organized in 1914, the United States Soccer Federation is the United States representative to the Federal Internationale de Football Association, the international body responsible for administering the game of soccer throughout the world.

The Youth Soccer Association is divided into fifty-five separate geographic units. Because of its large size and population, Texas is divided into two Associations, the South Texas Youth Soccer Association and the Plaintiff, North Texas State Soccer Association. The associations named as plaintiffs are members of and operate under the auspices of the North Texas State Soccer Association and conduct League competitions during two primary seasons, the fall season and the spring season. The soccer association year for competition purposes runs from September 1 to August 31.

Under the Interscholastic League's interpretation of its fall season soccer restriction, any varsity high school player who participates in non-school soccer, including the leagues operated by the Plaintiffs, at any time from the first day of school until November 12 of the same year violates the restriction and loses varsity eligibility for that school year. The restriction places no prohibition upon participation in non-school soccer competition during the Interscholastic League Soccer Season (generally November 12—February 2), after the UIL Soccer Season (generally February 2 to the last day of school), or during the summer when school is not in session.

The two minor Plaintiffs were formerly varsity high school players who elected to participate in non-school soccer league play in violation of the restriction and, thereby, became ineligible to play high school soccer during the 1984 season.

During the fall season, the varsity high school soccer players may participate along with others who elect to do so in organized soccer played during the school day as a

part of the physical education program of the school.

Organized soccer as a team sport is relatively new in the State of Texas and is not available in most cities or school districts. Strong programs, however, are found in the cities of San Antonio, Houston and Dallas. The Dallas program is particularly active and includes other cities in that area.

The evidence does not show the number of hours after school or at night required for active participation in the non-school soccer leagues. Neither does the record reflect the number of hours required before or after school or at night for participation in the school program.

Appellants, hereinafter collectively referred to as the Interscholastic League, assert that the trial court erred in granting relief to the appellees based upon a denial of equal protection under either article 1, section 3 of the Texas Constitution or the fourteenth amendment to the United States Constitution and 42 U.S.C. § 1983 (Supp. 1983). In support of the judgment of the trial court, the appellees rely primarily on *Sullivan v. The University Interscholastic League,* 616 S.W.2d 170 (Tex.1981), in which Sullivan challenged the constitutional validity of the Interscholastic League's student transfer rule providing that a pupil who has represented a high school other than his present school in either football or basketball is ineligible in that sport for one calendar year in the school to which he transfers.

The supreme court held that this transfer rule created two classes of students: those who do not transfer from one school to another, and those who do transfer. The rule treated these two classes of students differently by permitting members of the first group to compete in interscholastic activities without any delay while imposing a one-year period of ineligibility on the second group. It held that the purpose of the transfer rule was to discourage recruitment of high school athletes, which was a legitimate state purpose. The supreme court went further, however, and held that the equal protection analysis required it to reach and determine the question of whether the classifications drawn in the rule were reasonable in light of the purpose of the rule. It then held that the challenged classification did not operate rationally to deter recruitment. The reason for the holding was explained thus:

The U.I.L. Rule is overbroad and overinclusive. The rule burdens many high school athletes who were not recruited and were forced to move when their family moved for employment or other reasons. The fact that there is no means of rebutting the presumption that all transferring athletes have been recruited illustrates the capriciousness of the rule. The inclusion of athletes who have legitimately transferred with recruited athletes does not further the purpose of the transfer rule. Under strict equal protection analysis the classification must include all those similarly situated with respect to purpose. [Citations omitted] It is clear that the transfer rule broadly affects athletes who are not similarly situated.

The U.I.L. has a rule which specifically prohibits recruitment of high school athletes. The transfer rule was enacted in addition to this specific rule. The overinclusiveness and harshness of the transfer rule is not rationally related to the purpose of preventing recruitment.... In practical operation the transfer rule excludes from participation in varsity athletics the majority of students who transfer for reason unrelated to recruitment. The legitimate goal of the transfer rule does not justify the harsh means of accomplishing this goal utilized by the U.I.L.

*Sullivan,* 616 S.W.2d at 173.

The constitutional guaranty of equal protection under the law was considered by the Supreme Court of Texas in *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 673 (Tex.1968), in which the court said:

The classification is a reasonable one and well within the constitutional power of the Legislature. A state may classify its citizens into reasonable classes and apply

different laws, or its laws differently, to the classes without violating the equal protection clause of the Fourteenth Amendment.

Similar language is found in the case of *Bjorgo v. Bjorgo,* 402 S.W.2d 143 (Tex. 1966).

 The test is whether there is any basis for the classification which could have seemed reasonable to the legislature. *San Antonio Retail Grocers, Inc. v. Lafferty,* 156 Tex. 574, 297 S.W.2d 813 (1957). A classification is reasonable if it is based on a real and substantial difference having relationship to the subject of the particular enactment and operates equally on all within the same class. *State v. Richards,* 157 Tex. 166, 301 S.W.2d 597 (1957).

Again, the question was discussed in *Texas Women's University v. Chayklintaste,* 530 S.W.2d 927 (Tex.1975), wherein the court considered the classification of students by age for the purpose of requiring them to live on campus. The court stated:

> The age classification is constitutionally permissible if it is reasonable, not arbitrary and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."
>
> . . . .
>
> Although it was recognized that this type of educational experience may not be good for everyone, two witnesses for the University testified that they believed that the age bracket within this rule described closely "that group of students that would benefit most from the living and learning concept. . . ." The respondent offered no evidence on this point. The University has furnished a sufficient rationale for the classification. Therefore the trial court's holding that the rule violates equal protection because of age discrimination is reversed.

530 S.W.2d at 928–30.

These cases require us to determine: (1) the classifications created by the rule; (2) the purpose of the rule; and (3) whether the classifications drawn in the rule are reasonable in light of its purpose.

The fall season soccer restriction rule creates a class consisting of students who played varsity soccer the previous year and who also play non-school soccer as contrasted with a class consisting of those students who play nonschool soccer but who did not play varsity soccer (were not members of the varsity soccer team) the previous year. This is a relatively narrow classification which restricts only those students that the evidence shows are most likely to make the varsity squad. These are also the students who are most likely to be subjected to coaching pressure, one of the evils that the rule is designed to prevent.

Those students who were on the school soccer team during the preceding year, under the evidence before the court, were almost certain of being selected for the squad at the succeeding year. These students are in particular need of a rule which would promote a better, more well-rounded, more academically oriented education. Without encroaching upon any constitutionally protected fundamental right, the enforcement of this rule would obviously give the student more time for other activities during the two-month period prior to the beginning of the soccer season.

While the rule does not prohibit playing on association teams the balance of the school year, the evidence suggests that there is little chance for one to find a place on an association team once the club members have been chosen at the beginning of the season. The Interscholastic League reasonably could have determined that no restriction on play was needed after the UIL soccer season began, and that the perceived evil was limited to the varsity players.

The rule also bears a reasonable relationship to the objective of preventing a competitive advantage to the school teams whose members also play club soccer. There is evidence that additional organized practice under competent soccer club

coaches will increase the ability of the individuals participating. A competitive advantage may be gained even though all of the team members do not practice together. Since relatively few schools are located in the areas in which club soccer is popular, these schools would gain a competitive advantage if their players were able to begin organized and supervised workouts two months prior to the time that players from other schools had the opportunity to begin such practice.

The rule restricting the club soccer activities of varsity school athletes is reasonably related to the objectives of the rule, these are, the prevention of competitive advantage and coaching pressure, and the encouragement of the student athletes to take part in activities other than competitive soccer. These objectives are legitimate state objectives and the classification drawn by the rule are reasonable in light of its objectives.

The rule in question is not invalid by reason of the equal protection guarantees of the Texas Constitution, the United States Constitution, or section 1983. The findings of fact made by the trial court which would lead to a contrary conclusion are not supported by the evidence. Much of the testimony considered by the trial court was introduced in the trial of Cause No. 05–83–01250–CV which concerned a prior Interscholastic League rule creating a different classification. Although this testimony was admitted into evidence by agreement, it does not support the findings of fact relating to the classifications under the new rule.

Since we have concluded that a legitimate state purpose exists for the rule and that its created classifications are reasonable in light of its purpose, we hold that the appellees have not been denied equal protection under the law. *Sullivan v. University Interscholastic League,* 616 S.W.2d 170 (Tex.1981); *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670 (Tex.1968); *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *McLaughlin v. The State of Florida,* 379 U.S. 184, 85 S.Ct. 283, 284, 13 L.Ed.2d 222 (1964); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

No fundamental right protected by the Due Process Clause is presented in this case. *Niles v. University Interscholastic League,* 715 F.2d 1027 (5th Cir.1983); *Denis J. O'Connell High School v. Virginia High School League,* 581 F.2d 81 (4th Cir. 1978); *Walsh v. Louisiana High School Athletic Assn.,* 430 F.2d 1155 (5th Cir. 1970).

The judgment of the trial court in our cause number 05–84–01122–CV is reversed, and judgment is hereby rendered that the appellees be denied any injunctive relief. Further, pursuant to our holding above, the trial court's judgment in our cause number 05–83–01250–CV is reversed and the cause is dismissed with prejudice.

Accordingly, costs of appeal in cause number 05–83–01250–CV are charged one half against appellee's and one half against appellants. Further, in our cause number 05–84–01122–CV costs in the trial court and of this appeal are charged against the appellees.

Appellee's motion for rehearing of the opinion rendered by this court on March 15, 1985 is granted in part and denied in part and the opinion together with the judgment entered thereon are withdrawn and this opinion is substituted therefor.