**SIGN SUPPLIES OF TEXAS, INC.,
et al., Plaintiffs,**

v.

**Jim McCONN, et al., Defendants.**

**Civ. A. No. H–80–1713.**

United States District Court,
S. D. Texas,
Houston Division.

Oct. 31, 1980.

Affirmed by the Fifth Circuit Court of
Appeals (Order dated July 13, 1981).

Marian S. Rosen, Clyde W. Woody, Houston, Tex., for plaintiffs.

Robert J. Collins, Asst. City Atty., Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

CIRE, District Judge.

This is an action for permanent injunctive relief against the enforcement of Houston City Ordinances 80–351, 80–945, and 80–984, hereinafter collectively referred to as the ordinance or the sign ordinance. Plaintiffs challenge the constitutionality of the ordinance on First, Fifth, and Fourteenth Amendment grounds and also on the basis of Article I, Section 10 of the United States Constitution. The City of Houston defends its ordinance as being a valid exercise of its police power and reasonably related to the furtherance of significant governmental interests.

The Plaintiffs are various individuals and corporations engaged in the business of renting, leasing, and manufacturing portable signs. The ordinance in question represents an amendment to Chapters 46 and 59

of the City of Houston Building Code and it regulates the size, height, location, and construction of signs and billboards within the city limits of the City of Houston. As it refers to portable signs and the issues in this case, the ordinance requires a sign owner to secure a permit from the Sign Administrator of the City of Houston either within 180 days or prior to any alteration or change in use of a sign after the date of passage of the ordinance. It distinguishes between "off-premise" and "on-premise" signs and generally prohibits the placement of any new off-premise signs. Off-premise signs are defined as signs "advertising a business, person, activity, goods, products or services not usually located on the premises where the sign is installed and maintained, or which directs persons to any location not on the premises." Thus, the ordinance effectively prohibits the future use of a portable sign on an off-premise location immediately upon its removal from its present location.

"On-premise" signs are defined as signs "identifying or advertising the business, person, activity, goods, products or services primarily sold or offered for sale on the premises where the sign is installed and maintained when such premise is used for business purposes." Portable signs may continue to be used as "on-premise" signs only upon receipt of a permit. Before a permit is issued, the applicant must submit a permit fee in the approximate amount of $60.00 and demonstrate compliance with the ordinance's electrical, structural, construction, height, size, fire, and placement requirements. A person desiring to engage in the business of leasing or erecting signs in the City of Houston must first obtain a license to do so. The licensing provisions of the ordinance require the payment of an annual license fee of $300.00, submission of evidence of liability insurance, and the furnishing of a $25,000.00 "removal bond."

It is the plaintiffs' contention that the ordinance is unconstitutional on its face and particularly in its application to the portable sign business. Specifically, they maintain that the ordinance amounts to a taking of property without just compensation and

without due process of law, that it is fatally vague, that it infringes upon their right to engage in a legitimate business, that it constitutes a prior restraint on freedom of speech, impairs contract rights, and denies equal protection of law. Plaintiffs have also asserted that enactment of the ordinance exceeds the power of Houston's City Council and endangers a prior agreement between Texas and the United States.

The City points to the reasons for passage of the sign ordinance as stated in its introductory provisions: "(T)he unregulated construction of signs, billboards, and other outdoor advertising structures can present structural hazards which threaten the health and safety of the citizens of the City of Houston; and, ... can present impediments and dangers to traffic along City thoroughfares and easements." ( . . . ) "(T)he control of siting and placement of signs, billboards, and other advertising structures will promote and enhance the efficient and safe use of public thoroughfares." ( . . . ) "(T)he continued construction of off-premise signs leads to the diminution of property values for adjacent properties and thereby adversely impacts on the taxable value of such affected properties." ( . . . ) "(T)he continued construction of off-premise signs causes increased risk of distraction and danger to citizens driving and walking on streets and thoroughfares." ( . . . ) "(P)ortable or mobile signs present special traffic hazards when towed on public streets or displayed on public rights-of-way and present dangers to the health and safety of the citizens of the City of Houston because of their propensity to be blown about if not properly anchored."

■ As a home rule city, the City of Houston is empowered to enact any ordinance which is not inconsistent with the Constitution or laws of Texas. *McDonald v. City of Houston*, 577 S.W.2d 800 (Tex.Civ. App.—Houston [14th Dist.] 1979, writ ref'd n. r. e.). The ordinance in question was enacted pursuant to the specific statutory authority of Article 1175(24), Tex.Rev.Civ. Stat.Ann., which empowers the City of

Houston to "license, regulate, control or prohibit the erection of signs or billboards." Its passage was therefore, within the power of the Houston City Council.

■ It is settled that the regulation of outdoor advertising is a reasonable and proper exercise of the police power. *Suffolk Outdoor Advertising Co. v. Hulse,* 43 N.Y.2d 483, 402 N.Y.S.2d 368, 373 N.E.2d 263 (1977), *appeal dismissed,* 439 U.S. 808, 99 S.Ct. 66, 58 L.Ed.2d 101 (1978); *Markham Advertising Co. v. State,* 73 Wash.2d 405, 439 P.2d 248 (1968), *appeal dismissed,* 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512, *rehearing denied,* 393 U.S. 1112, 89 S.Ct. 854, 21 L.Ed.2d 813 (1969); *Lubbock Poster Company v. City of Lubbock,* 569 S.W.2d 935 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). Further, the promotion of highway safety and improvement of highway beautification are constitutionally permissible objectives under this police power. *E. B. Elliott Advertising Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir. 1970), *cert. dismissed,* 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970). Because the ordinance in question is an exercise of the legislative power of the City of Houston, it is entitled to a presumption of validity unless its terms represent a clear abuse of municipal discretion, bearing no substantial relationship to the public health, safety, morals, or general welfare. *Lubbock Poster Co. v. City of Lubbock, supra;* *Metromedia, Inc. v. Des Plaines,* 26 Ill.App.3d 942, 326 N.E.2d 59 (1975); *John Donnelly & Sons, Inc. v. Outdoor Advertising Board,* 369 Mass. 206, 339 N.E.2d 709 (Mass.1975); *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (1955). This Court initially finds that the ordinance as a whole sets forth a reasonable comprehensive plan for regulating all aspects of outdoor advertising in the City of Houston and that its provisions bear a substantial relationship to the public health, safety, and general welfare. The plaintiffs' constitutional arguments and discussion of the ordinance as it specifically relates thereto now follow with the Court's further conclusions of law.

## DUE PROCESS

1. *Taking of property without just compensation*

Plaintiffs complain of the prohibition against new off-premise signs and the permit and fee requirements of the ordinance as they apply to the portable sign business. They assert that the effect of these provisions is to totally prohibit portable signs and that the City of Houston has, therefore, taken their property without just compensation. While the ordinance substantially curtails the future use of portable signs in the City of Houston, the Court finds that it does not completely prohibit their use nor does it effect a "taking" as the plaintiffs have contended.

■ A reduction in the value of property is not necessarily equated with a taking and the fact that the challenged regulation prevents the most profitable use of property is not dispositive. *Andrus v. Allard,* 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979). The fact that enforcement of an ordinance causes pecuniary loss to those affected by it does not require that it be held invalid. *City of Houston v. Johnny Frank's Auto Parts Co.,* 480 S.W.2d 774 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). The sign ordinance in question does not effect a taking of the plaintiffs' signs but merely regulates a use of the signs which has been determined to be injurious and unlawful under the City's police power. *Inhabitants of Boothbay v. National Advertising Co.,* 347 A.2d 419, 81 A.L.R.3d 474 (Me.1975). Since the essence of police power is the control of private interest for public welfare, an ordinance is not rendered unconstitutional merely because private rights are subject to restraint or that loss will result to individuals from its enforcement. *Halsell v. Ferguson,* 109 Tex. 144, 202 S.W. 317, 321 (1918); *Dykes v. City of Houston,* 406 S.W.2d 176, 181 (Tex. 1966).

■ Even if this Court were to find a taking in the instant case, the evidence presented by the City of Houston estab-

lished that the ordinance provisions, as they relate to portable signs, bear a real and substantial relation to the public health, safety and general welfare. The Plaintiffs have not shown that these terms are clearly arbitrary and unreasonable and by reason of such proof, the ordinance must be upheld under this argument. See *John Donnelly & Sons, Inc. v. Outdoor Advertising Board*, 339 N.E.2d 709 (Mass.1975); *Inhabitants of Boothbay v. National Advertising Co.*, 347 A.2d 419, 81 A.L.R.3d 474 (Me.1975); *Ghaster Properties, Inc. v. Preston*, 176 Ohio St. 425, 200 N.E.2d 328 (Ohio 1964).

### 2. Vagueness

As a challenge on grounds of vagueness, the plaintiffs first point to numerous provisions of the ordinance as being so vague and indefinite that persons of ordinary intelligence must necessarily guess at their meaning and differ as to their application. Plaintiffs additionally contend that the ordinance is unconstitutionally vague in that it confers arbitrary and sole discretionary power upon the Sign Administrator.

The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). A statute need not be cast in "mathematically precise" terms. *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). It must, however, give fair warning of the forbidden conduct, in light of common understanding and practices. *Id.*

Among other contentions, the plaintiffs challenge the use of words such as "primary," "primarily," "not usually," and "easily moved" as being undefined in the ordinance. Without specifically addressing these and the additional provisions cited by the plaintiffs on these grounds, the Court concludes, after review and consideration of each, that none of the questioned provisions is so vague as to fail to give sufficient notice to a person of ordinary intelligence.

The ordinance, when read as a whole, provides the necessary measure of certainty. The prohibition against excessive vagueness does not invalidate every enactment which might have been drafted with greater precision. *Harper v. Lindsay*, 616 F.2d 849 (5th Cir. 1980).

On grounds of vagueness, the plaintiffs also object to the discretion conferred by the ordinance upon the Sign Administrator.

Regulations such as the ordinance in question must provide explicit standards for those who are to apply them in order to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The ordinance provides for notice and hearing prior to revocation of licenses and permits by the Sign Administrator. Revocation prior to any hearing may be had only in cases where "in the opinion of the Sign Administrator, the health, safety, or welfare of the citizens of the City of Houston is endangered," and the ordinance provides that the necessary hearing be conducted within three days of such action. Decisions and interpretations of the ordinance by the Sign Administrator are subject to appeal to the General Appeals Board of the City and thence to City Council. The ordinance provides specific and detailed safety and construction standards to guide the Sign Administrator in his actions thereunder. Except in cases of danger to health or safety, he may not act prior to notice and hearing. Regulations which fail to include the requisite narrowly drawn, reasonable, and definite standards to guide officials in the exercise of their discretion are void for vagueness. *International Society for Krishna Consciousness, Inc. v. Rochford*, 585 F.2d 263 (7th Cir. 1978). The sign ordinance promulgated by the City of Houston does not fail under this standard.

### EQUAL PROTECTION

The plaintiffs complain of the effect of the sign ordinance upon the portable sign industry because it applies to different

types of signs in a discriminatory manner. They also contend that it prohibits the exercise of their right to pursue a legitimate business. This last contention has been held to require an equal protection analysis. *Harper v. Lindsay*, 616 F.2d 849, 854 (5th Cir. 1980); *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978).

■ The dictates of equal protection are met if "the classifications drawn in a statute are reasonable in light of its purpose." *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). The unique nature of outdoor advertising justifies separate classification of particular advertising structures for the purpose of governmental regulation and restriction. *United Advertising Corp. v. Borough of Raritan*, 11 N.J. 144, 93 A.2d 362 (N.J.1952). The separate classification of off-premise and on-premise advertising has been held to be reasonable in light of the "real difference" between these two types of outdoor advertising activity and the police power purposes behind regulating outdoor advertising signs. *E. B. Elliott Advertising Co. v. Metropolitan Dade County*, 425 F.2d 1141, 1152 and 1154 (5th Cir. 1970), *cert. dismissed*, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970). Similar holdings are found in the cases of *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed*, 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1978), and *Inhabitants of Boothbay v. National Advertising Co.*, 347 A.2d 419, 81 A.L.R.3d 474 (Me.1975).

■ The ordinance in question prohibits most off-premise signs as a means of controlling the number of such structures, whether portable or not, within the Houston City limits. The City has shown such prohibition to be rationally related to the purposes of reducing the number of driver distractions, promoting highway safety, and improving the overall environment.

■ The fact that the permit requirements apply most stringently to on-premise portable signs is not an irrational classification. The City has shown that there are valid electrical and maintenance precau-

tions which are especially necessary to promote the safe use of this type of sign. Further, it is the portable sign that is most likely to be found on a public right of way, whether placed there initially by the owner or moved there without his knowledge. The presence of such structures on the public right of way constitutes a serious traffic danger and necessitates the type of regulation contemplated in Houston's ordinance.

■ The right to pursue a legitimate business is not "fundamental" for purposes of equal protection analysis. *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978). Review of the ordinance in question under the "rational basis" test reveals that its regulation of portable signs is rationally related to its purposes. The city has shown that signs in general cause driver distraction and a lessening of the aesthetic quality of Houston. An ordinance resulting in a reduction of the number of such structures is rationally related to the aim of reducing the number of existing driver distractions and improving the natural beauty of the environment.

## IMPAIRMENT OF CONTRACT

■ A regulation prohibiting off-premises advertising and thereby restraining the operation of contracts between sign owners and landowners does not violate Article I, Section 10 of the United States Constitution where the restraint is imposed in furtherance of public safety and general welfare. *Inhabitants of Boothbay v. National Advertising Co.*, 347 A.2d 419, 81 A.L.R.3d 474 (Me.1975); *Hav-A-Tampa Cigar Co. v. Johnson*, 149 Fla. 148, 5 So.2d 433 (1941). The exercise of the right of government to protect the lives, health, and general welfare of the people is paramount to any right under contracts between individuals. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), citing *Manigault v. Springs*, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905). Prior discussion herein has established that the restraint imposed upon the plaintiffs by the ordinance in question is in furtherance of public safety and general

welfare and this contention may not, therefore, be sustained. See also *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

## FREEDOM OF SPEECH

The Plaintiffs characterize the sign ordinance as a direct prior restraint on the content contained within the various signs erected throughout the City of Houston and contend that it is violative of the First Amendment.

 While commercial advertising enjoys a degree of First Amendment protection, it is subject to reasonable regulation that serves a legitimate public interest. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). The mere regulation of the time, place and manner of advertising is acceptable if for a valid purpose and if alternative channels of communication are left open. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

The primary First Amendment objection made by the plaintiffs to the ordinance in question is that it effects the content of commercial advertising by distinguishing between on-premise and off-premise signs and by restricting the use of "spectacular signs" to the displaying of time, date, temperature, weather, or stock reports. A "spectacular sign" is defined as one containing "automatically changing advertising, or which is equipped with glaring or rotating strobe or spot lights, or which has any moving message whatsoever." The Court need only refer to the plaintiffs' 5-minute videotape display of a message-bearing spectacular sign to find that such structures constitute an unsafe distraction for motorists attempting to simultaneously drive and read. Notably absent from the plaintiffs' proof at trial was any testimony to the effect that persons using the portable signs for advertising purposes would be completely precluded, because of the ordinance, from conducting any type of advertising in the future.

 The Supreme Court has made it clear that regulations may permit signs to advertise businesses located in the neighborhood but not elsewhere. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The regulation of advertising structures does not infringe upon freedom of speech where the public interests outweigh the free speech interests of the owner of the advertising structure. *Markham Advertising Co. v. State*, 73 Wash.2d 405, 439 P.2d 248 (1968), *appeal dismissed*, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969). As it applies to the plaintiffs herein, the Houston sign ordinance merely regulates, for a valid and reasonable public purpose, where and in what manner advertising may be conducted. As such, it is not repugnant to the First Amendment. See *Lubbock Poster Co. v. City of Lubbock*, 569 S.W.2d 935 (Tex. Civ.App.—Amarillo 1978, writ ref'd n. r. e.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).

## THE FEDERAL AND TEXAS HIGHWAY BEAUTIFICATION ACTS

 The Plaintiffs' contention that Houston's ordinance endangers the agreement between the State of Texas and the United States with regard to the enforcement of the Federal Highway Beautification Act, 23 U.S.C. § 131, is unfounded. The federal act was enacted to control outdoor advertising along the interstate highway system in order to promote the safety and recreational value of public travel. Texas later passed Article 6674v–1, Tex. Rev.Civ.Stat.Ann. to comply with the federal act. Section 4604(c)(6) of Houston's ordinance gives the Sign Administrator the authority to enforce any applicable terms and provisions of the Texas act and the agreement referred to by the plaintiffs entitled "Agreement for Carrying out National Policy Relative to Control of Outdoor Advertising," entered into between the United States and the State of Texas on May 2, 1972, as amended and supplemented.

Houston's ordinance in no way conflicts with or negates any provisions of either the

federal or state highway beautification acts. The federal act does not otherwise preempt the field of regulation in this area and the plaintiffs' objections to the lack of allowance for compensation under Houston's ordinance and the fact that real estate and political signs are exempt from its application in certain respects are, therefore, without merit. See *Lubbock Poster Co. v. City of Lubbock*, 569 S.W.2d 935 (Tex.Civ.App.— Amarillo 1978, writ ref'd n. r. e.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *Markham Advertising Co. v. State*, 73 Wash.2d 405, 439 P.2d 248 (1968), *appeal dismissed*, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969).

## THE REMOVAL BOND PROVISIONS

 As a final matter, some comment upon the "removal bond" provisions of the ordinance is necessary. Although these provisions were not specifically assailed in their pleadings or legal memorandum, the plaintiffs presented testimony from an insurance and bonding agent who had contacted numerous surety companies regarding the furnishing of a removal bond. Basically, his opinion was that the surety companies will consider such a bond to be a "hazardous bond" because the ordinance appears to provide for a forfeiture of the full amount of the bond in the event of noncompliance by the sign companies. He did not testify, however, that it will be impossible to secure such a bond and had not attempted to apply for one on behalf of any of the plaintiffs. Therefore, this Court cannot conclude that the bond provisions will operate to effect a total ban on all outdoor advertising and it should be emphasized that the City has never indicated it to be the intent of the sign ordinance to totally prohibit all outdoor advertising in the City of Houston.

The ordinance provides:

"(e) *Removal Bond*

Each person licensed under the terms of this Section 4606 shall furnish a bond in the amount of $25,000.00 *in a form determined by the City Legal Department*, or post a deposit in such amount, as

a guaranty of compliance with this Chapter and other applicable law, including the removal of signs when required." (emphasis added)

Subsequent sections of the ordinance set forth when the Sign Administrator may call for removal of unlawful or unsafe signs, provide for written notice to the sign owner to remove such a sign and, in the event of noncompliance with such notice, call for institution of notice and hearing proceedings to revoke the sign owner's permit and remove the sign. In this event, the ordinance provides that "(t)he sign company which received a permit for any such sign shall be deemed to have *forfeited* the removal bond . . ., and the Sign Administrator *shall use the proceeds of said bond to remove the sign.*" (emphasis added)

As called for in the ordinance, the City Legal Department has prepared a removal bond form which binds the principal and surety thereunder in the sum of $25,000.00 "*as reimbursement for removal costs* of any sign or signs that the said principal unlawfully erects, or causes to be erected, or maintains, or causes to be maintained . . . ." (emphasis added)

While the bond form supplied by the City indicates otherwise, the possibility of forfeiture is raised by the ordinance itself. Nevertheless, a constitutional issue is not before this Court. It has not been demonstrated that it will be impossible for a sign company to secure the required bond and therefore, the propriety of a total prohibition of advertising or conducting business is not raised. The ordinance remains regulatory and its removal bond provisions are simply susceptible of two constructions as presently written. The plaintiff's evidence did not demonstrate that, under either interpretation, the removal bond provisions of the ordinance are clearly arbitrary and unreasonable. Under prior discussions of the constitutional issues raised in this case, the removal bond provisions are not constitutionally infirm and remain only subject to proper interpretation.

## CONCLUSION

The Court has reviewed and considered the numerous additional contentions of the plaintiffs and finds it unnecessary to set forth any further discussion. All of the plaintiffs' objections to the Houston ordinance, including those not specifically addressed herein, are accordingly overruled. The Plaintiffs' request for permanent injunctive and declaratory relief against the enforcement of Houston City Ordinances 80–351, 80–945 and 80–984, is hereby DENIED.