ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 20, 2004

The Honorable Florence Shapiro
Chair, Education Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711

Opinion No. GA-0192

Re: Validity of a local ordinance that allows a nonconforming sign to be replaced with a new nonconforming sign (RQ-0129-GA)

Dear Senator Shapiro:

You inquire about the validity of a local sign ordinance that allows a nonconforming outdoor advertising sign to be replaced with a new nonconforming sign,[1] expressing concern that such ordinances violate state law and place federal funds for Texas highways in jeopardy.[2] *See* 23 U.S.C. § 131 (2000) (federal Highway Beautification Act of 1965);[3] TEX. TRANSP. CODE ANN. §§ 391.001-.255 (Vernon 1999 & Supp. 2004) (chapter 391). You ask whether "Texas law prohibit[s] the issuance of a new nonconforming sign permit to allow the replacement of an existing nonconforming sign with a new nonconforming sign." Request Letter, *supra* note 2, at 2. You also ask whether "the right to the nonconforming use belong[s] to the landowner or the sign owner." *Id.* Your questions relate to signs located on sites owned by someone other than the sign owner. *See id.*

I. **Legal Background**

A. **Federal Law**

The local sign ordinance you inquire about must be understood in relation to the Highway Beautification Act of 1965 (the "HBA"), *see* 23 U.S.C. § 131 (2000),[4] a provision of the Federal-Aid Highway Act. *See id.* §§ 101-164. Federal aid is paid to a state for the costs of certain

---

[1]A "nonconforming sign" is a sign that was lawfully erected but does not comply with the provisions of a law or rule passed at a later date or that later fails to comply with a law or rule due to changed conditions. *See* 43 TEX. ADMIN. CODE § 21.142(16) (2004); 23 C.F.R. § 750.707 (2003).

[2]*See* Letter from Honorable Florence Shapiro, Chair, Education Committee, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General (Nov. 11, 2003) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[3]*See also* 23 U.S.C. § 101 (2000) ("Historical and Statutory Notes" explaining that "Pub. L. 89-285, § 403, Oct. 22, 1965, 79 Stat. 1033," enacting section 136, and amending sections 131 and 319 of title 23, "may be cited as the 'Highway Beautification Act of 1965.'")

[4]*See id.*

highway projects pursuant to an agreement between the United States Secretary of Transportation and the grantee state to the effect that the highways will conform to federal requirements. *See id.* §§ 106, 109; *see also id.* § 120(a)-(b) (federal share is ninety percent of costs of projects affecting highways on Interstate System and eighty percent of costs of projects affecting other highways in the National Highway System). The HBA provides that the construction and maintenance of

> outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty.

*Id.* § 131(a); *see also id.* § 131(t) ("primary system" includes highways in the National Highway System). If states do not control outdoor advertising signs along interstate and primary highways pursuant to section 131, they will suffer a ten percent reduction in federal highway funds. *See id.* § 131(b). The HBA applies to advertising signs within 660 feet of the highway right-of-way and to signs located beyond 660 feet from the highway that are outside an urban area and intended to be seen from the highway. *See id.* However, the construction and maintenance of billboards in commercial or industrial zones within 660 feet of the right-of-way may be allowed under state law. *See id.* § 131(d). "Just compensation shall be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law and not permitted" under section 131(c). *Id.* § 131(g).

The agreement implementing the HBA in a particular state may include a grandfather clause under which criteria as to size, lighting, and spacing of signs in commercial or industrial areas within 660 feet on each side of the highway right-of-way apply only to new signs. *See* 23 C.F.R. § 750.707(c) (2003). The grandfather clause may only allow "an individual sign at its particular location for the duration of its normal life subject to customary maintenance." *Id.*

### B.     State Law

Transportation Code chapter 391 was adopted to comply with the HBA. *See* TEX. TRANSP. CODE ANN. § 391.002 (Vernon 1999) (purpose clause). Chapter 391 defines "outdoor advertising" as

> an outdoor sign, display, light, device, figure, painting, drawing, message, plaque, poster, billboard, or other thing designed, intended, or used to advertise or inform if any part of the advertising or information content is visible from the main-traveled way of the interstate or primary system.

*Id.* § 391.001(10) (Vernon Supp. 2004). Chapter 391, like the HBA, prohibits outdoor advertising (1) within 660 feet of a right-of-way, if the advertisement is visible from the interstate or primary

highway system, or (2) if outside an urban area, more than 660 feet from the right-of-way, but visible from the highway and erected for the purpose of having its message seen from the highway. *See id.* § 391.031(a) (Vernon 1999); *see also* 23 U.S.C. § 103(b)-(c) (2000); 43 TEX. ADMIN. CODE §§ 21.143 (2004) (continuance of nonconforming signs), 21.146 (limits on installing or maintaining outdoor advertising sign along regulated highway). The Texas Transportation Commission (the "Commission") may purchase or acquire by eminent domain "outdoor advertising that is lawfully in existence on a highway in the interstate or primary system." TEX. TRANSP. CODE ANN. § 391.033(a) (Vernon 1999). Signs within 660 feet of the right-of-way in commercial or industrial areas, as well as other specific kinds of outdoor advertising, are exempted from the prohibition. *See id.* §§ 391.005, .031(b)(4). The Commission is authorized to regulate outdoor advertising in areas with industrial or commercial land use. *See id.* § 391.032.

Chapter 391, subchapter C establishes license and permit requirements for permissible outdoor advertising along interstate and primary highways ("regulated highways"). *See id.* §§ 391.061-.068 (Vernon 1999 & Supp. 2004); *see also* 43 TEX. ADMIN. CODE §§ 21.141-.162 (2004) (chapter 21, subchapter I - "Regulation of Signs Along Interstate and Primary Highways"); *id.* § 21.142(23) (defining "regulated highway" as a highway on the interstate or primary system). A person who wishes to install or maintain outdoor advertising within the 660-foot corridor alongside a regulated highway must hold a license for each county in which the person installs and maintains outdoor advertising and must also have a permit for each sign. *See* TEX. TRANSP. CODE ANN. §§ 391.061, .067 (Vernon 1999). The Commission will issue a permit to a person whose outdoor advertising "if erected would comply with . . . [chapter 391] and rules adopted under Section 391.032(a)," that is, rules pertaining to outdoor advertising in areas of industrial or commercial land use. *Id.* §§ 391.032(a), .068(a)(2). Section 391.068(c) provides that "[a] permit issued to regulate the erection and maintenance of outdoor advertising by a political subdivision of this state within that subdivision's jurisdiction shall be accepted in lieu of the permit required by this subchapter if the erection and maintenance of outdoor advertising complies with this subchapter and rules adopted under Section 391.032(a)." *Id.* § 391.068(c).

The federal and state highway beautification provisions apply to interstate and primary highway systems and do not prevent cities from adopting different regulations and compensation provisions for signs on city streets that are not part of those systems. *See Sign Supplies of Tex., Inc. v. McConn*, 517 F. Supp. 778, 785-86 (S.D. Tex. 1980); *City of Houston v. Harris County Outdoor Adver. Ass'n.*, 732 S.W.2d 42, 48 (Tex. App.–Houston [14th Dist.] 1987, no writ); *Lubbock Poster Co. v. City of Lubbock*, 569 S.W.2d 935, 941-42 (Tex. App.–Amarillo 1978, writ ref'd n.r.e.), *cert. denied*, 444 U.S. 833 (1979). However, Local Government Code chapter 216 governs regulation of signs by cities, including home-rule cities. *See* TEX. LOC. GOV'T CODE ANN. §§ 216.001-.903 (Vernon 1999 & Supp. 2004). A home-rule city "may license, regulate, control, or prohibit the erection of signs or billboards by charter or ordinance," but may not "regulate the relocation, reconstruction, or removal of a sign in violation of Subchapter A," Local Government Code chapter 216. *Id.* § 216.901 (Vernon 1999); *see also id.* § 216.902 (municipality may extend the provisions of its outdoor sign ordinance within its area of extraterritorial jurisdiction).

The predecessor of Local Government Code chapter 216 was adopted not to implement the HBA, but to establish guidelines for municipal regulation of outdoor advertising and to provide more adequate compensation to the billboard owners than city ordinances had formerly provided. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 221, art. 1, 1985 Tex. Gen. Laws 1085 (adopting House Bill 1330); HOUSE STUDY GROUP, BILL ANALYSIS, Tex. H.B. 1330, 69th Leg., R.S. (1985) at 3. Chapter 216 establishes requirements for relocating, reconstructing, or removing any sign in a municipality and requires the city to compensate the owner of a sign that a city requires to be relocated, reconstructed, or removed. *See* TEX. LOC. GOV'T CODE ANN §§ 216.001(a) (Vernon 1999) (purpose of chapter), 216.003(b) (Vernon Supp. 2004) (compensation); *see also id.* § 216.002(1) (Vernon 1999) (defining "sign" as "an outdoor structure, sign, display, light, device, figure, painting, drawing, message, plaque, poster, billboard, or other thing that is designed, intended, or used to advertise or inform"). "In lieu of paying compensation, a municipality may exempt from required relocating, reconstruction, or removal those signs lawfully in place on the effective date of the requirement." *Id.* § 216.003(d) (Vernon Supp. 2004). The compensation requirements of chapter 216 "do not apply to a sign that was erected in violation of local ordinances, laws, or regulations applicable at the time of its erection." *Id.* § 216.013(a) (Vernon 1999). Nor do they apply

> to a sign that, having been permitted to remain in place as a nonconforming use, is required to be removed by a municipality because the sign, or a substantial part of it, is blown down or otherwise destroyed or dismantled for any purpose other than maintenance operations or for changing the letters, symbols, or other matter on the sign.

*Id.* § 216.013(b); *see also id.* § 216.013(c) (a sign or substantial part of it is considered to have been destroyed only if the cost of repairing the sign is more than sixty percent of the cost of erecting a new sign of the same type at the same location).

## II.    Question 1

You inquire about a conflict between a city sign ordinance and state regulations governing outdoor advertising. Your question is as follows:

> Is a local ordinance which allows a permit to be issued to replace a nonconforming sign with a new nonconforming sign invalid under state regulations [promulgated under Transportation Code chapter 391]. Put another way, does Texas law prohibit the issuance of a new nonconforming sign permit to allow the replacement of an existing nonconforming sign with a new nonconforming sign?

Request Letter, *supra* note 2, at 2. A municipal sign ordinance applies throughout the city and may include the city's extraterritorial jurisdiction as well, *see* TEX. LOC. GOV'T CODE ANN. § 216.902

(Vernon 1999), but a conflict between the ordinance and state regulations can arise only where a regulated highway is routed through a city or its extraterritorial jurisdiction.

A municipal sign ordinance, as we have noted, may "grandfather" existing signs that do not comply with the ordinance instead of requiring their removal and compensating the sign owner. *See id.* § 216.003(d) (Vernon Supp. 2004). Chapter 216 does not prohibit a home-rule city from allowing a grandfathered billboard to be replaced. *See id.* § 216.901 (Vernon 1999) (authority of home-rule city to "license, regulate, control, or prohibit the erection of signs or billboards by charter or ordinance").

Where a state grandfather clause adopted pursuant to federal regulation allows a nonconforming sign to be located within 660 feet of an interstate or primary highway, the sign may not be replaced by another nonconforming sign. *See* 23 C.F.R. § 750.707(c) (2003) (grandfather clause may allow only "an individual sign at its particular location for the duration of its normal life subject to customary maintenance"). The Department of Transportation ("TxDOT") will not issue a new permit for a nonconforming sign. *See* 43 TEX. ADMIN. CODE § 21.143(c)(2) (2004). Thus, the HBA and chapter 391 prohibit the issuance of a new nonconforming sign permit in a location within the 660-foot corridor along interstate and national highways defined by the HBA. *But see* 23 U.S.C. § 131(d) (2000); TEX. TRANSP. CODE ANN. § 391.031(b)(4) (Vernon 1999) (exemption for construction and maintenance of billboards in commercial or industrial zones within 660 feet of the right-of-way).

A city may be certified to exercise control of outdoor advertising signs pursuant to the HBA and chapter 391 if TxDOT, after consulting with the Federal Highway Administration, determines that the city's sign ordinance is consistent with the HBA. *See* 43 TEX. ADMIN. CODE § 21.151(c) (2004) (certification process). A permit issued by a certified city will be accepted in lieu of a permit issued by TxDOT. *See id.* § 21.151(a); *see also* TEX. TRANSP. CODE ANN. § 391.068(c) (Vernon 1999) (acceptance of permit issued by political subdivision in lieu of state permit). A city ordinance that is consistent with the HBA and chapter 391 will not authorize a new nonconforming sign in the 660-foot corridor next to regulated highways.

If a local sign ordinance is inconsistent with the requirements of the HBA, for example, by allowing the replacement of an existing nonconforming sign with a new nonconforming sign in the same location, it will not govern signs in the corridor affected by the HBA. Even if the political subdivision issues a permit for the new nonconforming sign within 660 feet of an interstate or national highway, the sign would still be subject to the permit requirements stated in the Commission's rules, which prohibit the issuance of a new nonconforming sign permit in that corridor. *See* 43 TEX. ADMIN. CODE §§ 21.143, .150 (2004). The sign owner will not be able to secure the state permit needed to maintain a new nonconforming sign within 660 feet of an interstate or national highway and will not be able to maintain a sign that violates requirements of the HBA. State law limits the application of a local sign ordinance so that federal highway funding is not jeopardized. The federal and state highway beautification provisions do not prevent political subdivisions from applying different regulations to signs on streets that are not part of the interstate

or primary highway systems. *See Sign Supplies of Tex.*, 517 F. Supp. at 785-86; *Harris County Outdoor Adver.*, 732 S.W.2d at 48; *Lubbock Poster*, 569 S.W.2d at 941-42.  A local ordinance that allows a permit to be issued to replace a nonconforming sign with a new nonconforming sign is not invalid under state law, but state law supercedes such ordinances in areas subject to the HBA and Transportation Code chapter 391. *See* TEX. TRANSP. CODE ANN. § 391.068 (Vernon 1999).  Such local ordinance provisions do not place federal funding for Texas highways in jeopardy.

## III.    Question 2

You ask whether "the right to the nonconforming use belong[s] to the landowner or the sign owner." Request Letter, *supra* note 2, at 2.  The sign owner's and landowner's interests in a nonconforming sign depend on the laws and regulations applicable to the particular sign, and in some cases, the contract between the sign owner and the landowner will also be relevant.

We address this question in terms of the HBA, Transportation Code chapter 391, and regulations adopted under these statutes. These provisions address the sign owner's and landowner's interests and responsibilities with respect to a nonconforming sign in the corridor along a regulated highway. *See* TEX. TRANSP. CODE ANN. §§ 391.061-.090 (Vernon 1999 & Supp. 2004) (chapter 391, subchapter C - "License and Permit for Outdoor Advertising"); *id.* §§ 391.065 (Vernon 1999) (authority of Commission to adopt rules for licensing); 391.068 (permit requirements; Commission by rule shall prescribe, among other things, form and content of permit application).  A sign owner must secure a license covering the county in which the sign is to be installed or maintained and a permit to maintain the sign. *See* 43 TEX. ADMIN. CODE §§ 21.149, .150 (2004).  No permit will be approved unless the applicant has obtained written permission from the owner of the site on which the sign is located. *See id.* § 21.150(b)(2).  Nonconforming signs may continue in a regulated area subject to the requirements stated in TxDOT rules. *See id.* § 21.143.  "[T]he permit holder's sign . . . may not be relocated even if the sign is sold, leased, or otherwise transferred, without affecting its status," unless the relocation results from a right-of-way acquisition to accommodate a regulated highway project. *Id.* § 21.143(2)(A); *see id.* § 21.160 (relocation of certain signs along regulated highways).  The permit allows for reasonable repair and maintenance of a nonconforming sign. *See id.* § 21.143(b).  A new permit is required for substantial changes as defined by rule, but TxDOT will not issue a new permit for a nonconforming sign. *See id.* § 21.143(c)(1)-(2). *See also* 23 C.F.R. § 750.707(c) (2003) (grandfather clause may allow only "an individual sign at its particular location for the duration of its normal life subject to customary maintenance").

TxDOT regulations make the owner of a sign along a regulated highway responsible for securing the permit for a nonconforming sign and for maintaining the sign. *See* 43 TEX. ADMIN. CODE § 21.143 (2004).  Thus, the sign owner effectively controls the nonconforming use, subject to limits found in the statutes, regulations, and lease with the owner of the site where the sign is located. *See id.* §§ 21.143(b), 21.150 (2004); *see also id.* § 21.150(b)(2) (no permit will be approved "unless the applicant has obtained written permission from the owner" of the site on which the sign is located).

City ordinances may differ as to the regulations and compensation provisions they apply to signs on city streets that are not subject to the HBA or chapter 391. Although municipal regulations must be consistent with Local Government Code chapter 216, they will not necessarily include identical provisions for nonconforming signs. It is not possible to determine in the abstract that the nonconforming use in a sign governed by a city ordinance "belongs" to either the sign owner or the land owner. Thus, where a nonconforming sign is governed by a municipal ordinance, questions about interests in the nonconforming use to that sign must be addressed in terms of the applicable statues, regulations, ordinances, and contracts.

## S U M M A R Y

A local sign ordinance that allows a permit to be issued to replace a nonconforming sign with a new nonconforming sign is not invalid under state law, but state law supercedes such local provisions in areas along highways that are subject to the federal Highway Beautification Act. Such provisions do not place federal funding for Texas highways in jeopardy. It is not possible to determine in the abstract that the nonconforming use belongs to either the sign owner or the land owner. Interests in the nonconforming use must be evaluated in terms of the applicable statues, regulations, ordinances, and contracts.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee